**IN THE UNITED STATES**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **KITSON ENTERTAINMENT GROUP LLC** | : | |
| 244 Fifth Ave | : | |
| Suite B215 | : | |
| New York, NY  10001 | : | |
| | : | |
| **PLAINTIFF** | : | |
| | : | |
| | : | |
| v. | : | Case No.: 1:26-cv-982 |
| | : | |
| **THE ESTATE OF CARL EDWARD THOMPSON, SA** | : | |
| **ASHLEY THOMPSON, individually and as** | : | |
| **Personal Representative of the ESTATE OF CARL** | : | |
| **EDWARD THOMPSON p/k/a CHUCKY THOMPSO**N | : | |
|     6938 Andersons Way, Apt. 102 | : | |
|     Laurel, MD 20707 | : | |
| | : | |
| **SONY MUSIC PUBLISHING (US) LLC** | : | |
|     25 Madison Avenue, 24th floor | : | |
|     New York, NY 10010 | : | |
| | : | |
| **EMILLE THOMPSON** | : | |
|     4111 Nicholson Street, Apt. 5 | : | |
|     Hyattsville, MD 20782 | : | |
| | : | |
| **MYLES TURNAGE** | : | |
|     7640 State Route 15, lot 39 | : | |
|     Defiance, OH 43512 | : | |
| | : | |
| **QUINCEY THOMPSON** | : | |
|     5685 Little Branch Run | : | |
|     Hyattsville, MD | : | |
| | : | |
| **TREY THOMPSON** | : | |
|     2703 Bellview Ave | : | |
|     Cheverly, MD | : | |
| | : | |
| **ASHLEY THOMPSON** | : | |
|     6938 Anderson Way, Apt 102 | : | |
|     Laurel, MD 20707 | : | |
| | : | |
| **DEFENDANT(S)** | : | |

## COMPLAINT

**COMES NOW** the Plaintiff,  KITSON ENTERTAINMENT GROUP LLC., by and through counsel, respectfully moves for judgement against the Defendant(s), collectively and individually, THE ESTATE OF CARL EDWARD THOMPSON, JR., EXECUTOR ASHLEY THOMAS, ASHLEY THOMAS, EMILLE THOMPSON, MYLES TURNAGE, QUINCEY THOMPSON, AND TREY THOMPSON, for breach of contract, quantum meruit, and unjust enrichment, and in support thereof further states as follows:

## JURISDICTION

1.     Jurisdiction is vested in this court as founded pursuant to 28 U.S.C. § 1331 since this action arises under the laws of the United States. This Court has personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and New York Civil Practice Law and Rules §§ 301 and 302, and venue under 28 U.S.C. § 1391.

2.      All parties hereunder have mutually agreed to the jurisdiction of the State of New York.

## PARTIES

3.     The Estate of Carl Edward Thompson., Jr., is located in the state of Maryland and includes the participation of Executor and individual Ashley Thompson, Emille Thompson, Myles Thompson and Trey Thompson , (collectively referred to as the 'Thompson Estate'). The Thompson Estate regularly conducts business in the State of New York and agreements are regulated by its Laws.

4. Sony Music Publishing is a global music publishing company that manages the rights to a vast catalog of songs, ensuring songwriters and composers are compensated for the use of

their music. They provide licensing, royalty collection, and other services to help creators maximize the value of their work. Their headquarters is located in New York City, and are regulated by its Laws.

5.      The Kitson Entertainment Group, LLC., provides catalog consultant services associated with intellectual property, including music catalog rights, licensing, publishing and derivative works.

6.      The parties entered into an Exclusive Shopping Agreement for services effective on or around May 10, 2025, and have continued by written contract, affirmative, mutual agreement and understanding.

7.      The Plaintiff, Kitson Entertainment Group, LLC., is located in New York and is incorporated and operates under the laws and regulations of the State of New York.

8.       The Parties herein have agreed by mutual consent to be governed by all laws constructed and in accordance with the laws of the State of New York.

## FACTUAL ALLEGATIONS

9.      This lawsuit arises out of a breach of contract claim that occurred on or about December 15, 2025.

10.      The Estate of Carl Thompson by and through its authorized representative Ashely Thompson and Kitson Entertainment Group, LLC, entered into a Consultant Shopping Agreement.

11.      Defendant sought to engage Plaintiff on an exclusive basis to represent and manage opportunities related to the Thomas Estate and its associated intellectual property, including music catalog rights, image and likeness, licensing, publishing, derivative works, and intended for Plaintiff to identify potential deals for the purchase thereof.

12.    On or about May 10, 2025, Plaintiff and Defendant entered into a written agreement (the "Agreement") pursuant to which Plaintiff would provide certain services related, including but not limited to identifying opportunities, negotiating terms, and facilitating payments from third-party sources. A true and correct copy of the Agreement is attached hereto as Exhibit A.

13.  In consideration for Plaintiff's services, Defendant agreed to pay Plaintiff a portion of proceeds from transactions facilitated by Plaintiff, specifically twenty percent (20%) of gross proceeds off the top of such deal(s) payable directly to Kitson Entertainment Group., prior to any distribution to the Estate, its agents, or beneficiaries.

14. Plaintiff fully performed all obligations under the Agreement, including identifying targets, facilitating negotiations, coordinating with third-party capital sources, and assisting with the execution of related agreements.

15. Plaintiff was responsible for facilitating third-party capital funding from a music publisher, referred to herein as Sony Music Publishing (US) LLC, including coordinating the first and second payouts from the proceeds related to the Defendant's transaction.

16. Defendant issued a partial payment to Plaintiff from the first payout. However, Defendant failed to remit the remaining balance owed to Plaintiff pursuant to the Agreement.

17. Defendant, through an email dated January 5, 2026, acknowledged that Plaintiff was entitled to receive additional payment upon the second payout from SONY but did not specify the amount or provide the required letter of direction necessary to release the funds. (Exhibit 2).

18. Despite repeated demands, Defendant has failed and refused to remit the balance owed to Plaintiff under the Agreement.

19. All conditions precedent to Defendant's obligation to pay Plaintiff have been satisfied.

20.  The Agreement remains in full force and effect, and Plaintiff and Defendant are in mutual agreement.

21. Plaintiff relied on Defendant's representations and promises regarding the second payout to their detriment, expending additional time and resources in anticipation of full payment.

22.  Defendant's refusal to provide a balance of payment has caused Plaintiff to experience financial harm, including delays in business operations and lost opportunities.

23. Plaintiff at all times acted in good faith and in accordance with the terms of the Agreement, including providing accurate and timely documentation necessary for payments from Sony Music Publishing.

24.  Defendant, despite acknowledging Plaintiff's right to the second payout, has taken no steps to remedy the outstanding balance, and no lawful justification exists for such failure.

25. Plaintiff has preserved all communications and documentation evidencing Defendant's obligation to pay, including emails, letters, and other related documentation to the transaction with Sony Music Publishing, which are available for production as needed.

26.       The Defendant made a partial payment to Plaintiff in the amount of Two Hundred and Twenty five thousand dollars.

27.       The Defendant is in breach of an enforceable contract with the Plaintiff.

28.       The Defendant's actions harmed, injured, and unduly enriched the Defendant's , herein.


## COUNT 1

## BREACH OF CONTRACT

29.     The Plaintiff adopts and incorporates herein all of the factual allegations as set forth above.

30.     The Plaintiff and Defendant entered into a valid and binding engagement agreement requiring payment for Plaintiff services rendered by the Plaintiff and its employees.

31.      The Plaintiff duly rendered the consultant services mutually contemplated by the Defendants entering the agreement.

32.     The Plaintiff, in accordance with the agreement, invoiced the Defendant for services as reasonably required.

33.     Defendants were at all times aware of the Plaintiff's  activities and the personnel involved in the representations, and the work being done.

34.     The Defendant breached the Consultant agreement by failing to pay amounts due in accordance with the terms set forth therein.

35.     Defendant's wrongful acts and/or omissions, as alleged herein, have caused or will cause Defendant to possess funds to which Defendant is not entitled, including funds which have been earned by Plaintiff for work that was performed and for which Defendant received a benefit.

36.     As a direct and proximate cause of the Defendants actions the Plaintiff was injured.

37.     The unpaid balance of Defendant's contractual obligation to the Plaintiff is $1,200,000.

## COUNT 2

## QUANTUM MERUIT

38.      The Plaintiff adopts and incorporates herein all of the factual allegations set forth above.

39.      The Plaintiff and Defendant entered into a valid and binding engagement agreement requiring payment for Plaintiff services rendered by the Plaintiff and its employees.

40.      The Plaintiff duly rendered the consultant services mutually contemplated by the Defendant entering the agreement.

41.      Defendant was at all times aware of the Plaintiff's activities and the personnel involved in the representations, and the work being done.

42.      The Defendant breached the Consultant agreement by failing to pay amounts due in accordance with the terms set forth therein. (Exhibit 2)

43.      Defendant's wrongful acts and/or omissions, as alleged herein, have caused or will cause Defendant to possess funds to which Defendant is not entitled, including funds which have been earned by Plaintiff for work that was performed and for which Defendant received a benefit.

44.      If the Court does not find for plaintiff in Count One, Plaintiff pleads in the alternative that it is entitled to recover from the Defendant in Quantum Meruit.

45.      As a direct and proximate cause of the Defendant's actions the Plaintiff was injured.

46.      The value of the uncompensated services is $1,200,000.

## COUNT 3

## UNJUST ENRICHMENT

47.     The Plaintiff adopts and incorporates herein all of the factual allegations set forth above.

48.      The Plaintiff and Defendant entered into a valid and binding engagement agreement requiring payment for Plaintiff services rendered by the Plaintiff and its employees.

49.      The Plaintiff duly rendered the consultant services mutually contemplated by the Defendant entering the agreement.

50.     Defendant was at all times aware of the Plaintiff's activities and the personnel involved in the representations, and the work being done.

51.     The Defendant breached the Consultant agreement by failing to pay amounts due in accordance with the terms set forth therein.

52.     Defendant's wrongful acts and/or omissions, as alleged herein, have caused, or will cause Defendant to possess funds to which Defendant is not entitled, including funds which have been earned by Plaintiff for work that was performed and for which Defendant received a benefit.

53.     As a direct and proximate cause of the Defendant's actions the Plaintiff was injured.

54.     If the Court does not find for Plaintiff in Count One or Count Two, Plaintiff pleads in the alternative that it is entitled to recover from Defendant in Unjust Enrichment.

55.     As a direct and proximate cause of the Defendant's actions the Plaintiff was injured.

56.     The value of the uncompensated services is $1,200,000.

    WHEREFORE, for reasons stated herein, KITSON ENTERTAINMENT GROUP  LLC,

by and through its counsel, prays that this Court enter judgment against Defendants THE ESTATE OF CARL EDWARD THOMPSON, JR., EXECUTOR ASHLEY THOMPSON, ASHLEY THOMPSON EMILLE THOMPSON, MYLES TURNAGE, QUINCEY THOMPSON, AND TREY THOMPSON,  in the total amount of One Million and Two Hundred and Twenty Thousand Dollars ($1,220,000), for the damages caused by Defendant's breach of contract, and including post-judgement interest, the cost of litigation, reasonable attorney fees and for such other equitable relief as this Honorable Court may deem just and proper.

Respectfully submitted,

S/Keith Ferguson, Jr.
Law Office of Keith Ferguson, Jr., PLLC
5517 Broadway, Unit 36
Bronx, New York 10463
e: help@lookferg.com
o: (917) 794-0700
Counsel for Plaintiff

**<u>Exhibit A</u>**

**<u>Consulting Agreement</u>**

## Exclusive Shopping Agreement

This Exclusive Shopping Agreement ("Agreement") is made and entered into as of May 10, 2025, by and between:

The Estate of Carl Edward Thompson, a Maryland estate represented by its duly appointed Executor, Ashley Thompson ("Estate" or "Executor"),

and

Kitson Entertainment Group, LLC, a [State] limited liability company, with offices at 244 Fifth Avenue, Suite B215 New York, NY 10001 ("Kitson Ent.").

### 1. Purpose

The Estate engages Kitson Ent., on an exclusive basis to represent and shop deals related to the Carl Edward Thompson estate and associated intellectual property, including but not limited to music catalog rights, image and likeness, licensing, publishing, and derivative works ("the Project").

### 2. Exclusivity

Kitson Ent., shall have the exclusive right to present, negotiate, and shop the Project to third parties, including labels, publishers, streaming platforms, brands, and production companies for a period of twenty-four (24) months from the Effective Date ("Term").

If the Estate elects to pause activities for any reason for a period up to ten (10) months, this exclusivity remains valid and the Term shall be automatically extended by the length of the pause.

### 3. Compensation

In the event that a deal is successfully secured as a result of Kitson Ent., efforts during the Term or within

A.T

## Exclusive Shopping Agreement

Eighteen (18) months thereafter (the "Tail Period"), Kitson Ent. shall be entitled to twenty percent (20%) of the gross proceeds off the top of such deal(s), payable directly to Kitson Ent. prior to any distributions to the Estate, its agents, or beneficiaries.

4. Duties of Kitson Ent.

Kitson Ent. shall use commercially reasonable efforts to promote and solicit interest in the Project, including preparing materials, conducting outreach, and engaging relevant industry contacts. All final decisions regarding any deal shall remain with the Executor, subject to the terms of this Agreement.

5. Representations/ Warranties

The Estate represents that Ashley Thompson is the legal Executor of the Carl Edward Thompson estate and has full authority to enter into this Agreement.

Kitson Ent. represents that it will act in good faith and in the best interest of the Estate while shopping the deal.

The Estate agrees to indemnify, defend, and hold harmless Kitson Ent., including its officers, directors, employees, agents, and affiliates, from and against any and all claims, demands, liabilities, damages, losses, costs, and expenses (including reasonable attorneys' fees) arising out of or resulting from any third-party claim related to or arising from the Estate's actions, omissions, representations, or dealings, including but not limited to any transaction in which the Kitson Ent., is involved on the Client's behalf.

This indemnification obligation shall survive the termination or expiration of any agreement between the parties herein.

6. No Circumvention

During the Term and Tail Period, the Estate shall not enter into any third-party deals for the Project or circumvent Kitson Ent's involvement. Any such violation shall trigger Kitson Ent's right to immediate compensation as if it had brokered the deal.

7. Governing Law

This Agreement shall be governed and construed under the laws of the State of New York

A.T

**Exclusive Shopping Agreement**

8. Entire Agreement

This Agreement represents the entire understanding of the parties and may not be modified unless in writing signed by both parties.

9. Counterparts.  This agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A signed copy of this agreement delivered by facsimile, email, or other electronic means shall be considered to have the same legal effect as an original signed copy.

IN WITNESS WHEREOF, the parties have executed this Agreement as of May 10, 2025.


The Estate of Carl Edward Thompson

By: _____          Date: 6/5/2025

Ashley Thompson, Executor


Kitson Entertainment Group, LLC.

By: _____          Date: 5/10/2025

Blossette Kitson, Founder

**Exhibit 2**

**From:** Ashley Thompson <thompsonashley853@gmail.com>
**Sent:** Wednesday, December 10, 2025 10:42 AM
**To:** Blossette Kitson <b.kitson@urexg.com>
**Cc:** Daryl Jones <djones@ddjlaw.com>
**Subject:** Re: Managerial and Broker Contribution in Compensation Assessment

Hi Blossette,

I just read through your email and I'm forwarding it to the group now. We had a call last night and we're having another one today since my sister joined late.

I want you to know that I fully understand and appreciate all of the work you've done — both before and after my dad's passing. My relationship with you was different from that of my siblings, and if I were the sole heir receiving the full amount (minus Sony deductions and taxes), there would be no question about paying you at the higher end of the percentage standard. If my father were still here, given his long-standing relationship with you, it would also be a no-brainer.

But he left not just one or two, but five heirs — five adults who are each starting new chapters in their lives and all have their own perspectives. While they appreciate everything you've done for the estate over the past four years — which is the amount of time we truly came to know you — they are basing their decisions on the information and expectations originally presented to them.

When we first met, you explained that you and my father had a very relaxed working relationship and that there was no signed agreement, only a handshake deal. Even though $10k a year is low by industry standards (which I didn't know at the time), I paid it consistently as soon as payments began. I honored everything you told me you and my dad had established. I never missed a payment, always stayed on schedule, and even with the $25k in arrears you invoiced — my siblings agreed, we created a payment schedule and we were down to the last $3k before Sony began withholding funds.

We've now been recouped for over a year, and during that time there was no discussion of renegotiating your rate or adjusting to the industry standard. We paid exactly what you asked for, and we believed everything was fine. I understand that you're disappointed and that you feel a higher percentage better reflects the work you've put in. I truly hear you. But because everything is being divided five ways, increasing the percentage on an already stretched amount is a difficult conversation for my siblings.

Blossette, I adore you and I deeply appreciate everything you've done — including guiding me through this deal process and helping keep me grounded. I will do what I can on the call to today to advocate for adjusting the dollar amount. As it stands, the first immediate payment is  $225,000, and we will be making an additional payout to you in February when Sony disburses the next amount, as I mentioned on the phone last night.

I'll give you a call later after I've spoken with my siblings.

Best regards,
Ashley Thompson